# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division



FILED
U.S. DIST. COURT
BRUNSWICK DIV.

2005 JUL 27  A 9: 5?

GEORGE LIGHTSEY          :          CIVIL ACTION
and DORIS LIGHTSEY,
                         :
     Plaintiffs,
                         :
        v.
                         :
Administrator or Executor
of Estate of RALPH MILES,   :
individually and in his
capacity as Public Works    :
Director, Appling County,
Georgia; THOMAS DEEN,       :
individually and in his
capacity as County Manager, :
Appling County, Georgia;
and APPLING COUNTY, GEORGIA, :

     Defendants.          :          NO. CV203-171

## O R D E R

Plaintiffs, George and Doris Lightsey, filed the above-captioned case against Defendants, Ralph Miles and Thomas Deen, in their individual and official capacities, and Appling County, Georgia, asserting a myriad of claims arising out of Mr. Lightsey's termination by the County, including procedural and substantive due process claims, freedom of speech and

association claims, and a claim, or claims, for invasion of privacy.

Presently before the Court is Defendants' motion for summary judgment. Because Miles and Deen may have violated Lightsey's clearly established intimate association rights, Defendants' motion will be **DENIED** as to that claim. Because there are no material facts in dispute as to Plaintiffs' other claims, Defendants' motion will be **GRANTED** in part.

## BACKGROUND

In 1974, George Lightsey began working for the County. On July 2, 2002, while working as a records purchasing clerk in the Road Department, he asked his supervisor, Public Works Director Ralph Miles, who he should charge for certain pipe installation jobs performed by County workers. Lightsey needed this information because the relevant job orders did not identify the property owner requesting the service. Although Miles would not name the property owners, eventually, he told Lightsey to charge County Commissioner David Eason for the work.

About ten days later, Miles asked Lightsey to transfer to the County Landfill, promising a promotion and a raise.

2

Lightsey agreed to become Landfill Superintendent, with the understanding that he would earn two dollars more per hour in the position. Lightsey continued to be under Miles' supervision at the Landfill. Lightsey alleges that he was named to this position even though Defendants knew he was not yet certified by the state as a landfill operator.

In the summer of 2002, Doris Lightsey applied for a job as a billing clerk in Miles' department. On July 10, 2002, Miles allegedly told Mrs. Lightsey that she could have the job if she would "ride off" with him. Although Mrs. Lightsey declined this offer, she avers that Miles made unwelcome advances on two other occasions.

On the morning of August 28, 2002, Miles drove a County vehicle to the Lightseys' home while Mr. Lightsey was at work. Between Miles' comment in July and his visit to the house, another County employee informed Mrs. Lightsey that she was no longer under consideration for the billing clerk position. When Miles told her that he was stopping by to talk about her application for employment, Mrs. Lightsey told him that she knew that she was out of the running. Nonetheless, Miles insisted that he could still get her the job if she would "ride off and talk about it" with him. Mrs. Lightsey understood

3

Miles to be sexually propositioning her, so she warned him that she might file a lawsuit against him.

On September 3, 2002, Mr. and Mrs. Lightsey attended a public meeting of the Appling County Board of Commissioners. That night, the County's pipe installation payment policy was on the agenda. Before the meeting, Mr. Lightsey had complained to Miles about the misuse of taxpayer funds caused by certain citizens' failure to pay for this service. During the meeting, Miles denied that pipe had been installed free of charge. Thereafter, Mr. Lightsey contradicted Miles, stating that several County residents had pipe installed without paying for it.

After the meeting, County Manager Thomas Deen approached Plaintiffs and asked Mr. Lightsey how he knew that pipe had been installed without payment. After Mr. Lightsey told Deen that "it was public knowledge," Deen challenged him to "Name me one." In response, Mr. Lightsey fingered Commissioner Eason as a wrongdoer in the pipe installation imbroglio. Plaintiffs allege that Deen then placed his hand on Mr. Lightsey's shoulder, told him to "pipe down," and informed him that he was suspended for two days without pay.

AO 72A
(Rev. 8/82)

On September 12, 2002, Miles toured the Landfill with Harold Barber. Four days later, Miles introduced Barber to one of Mr. Lightsey's co-workers at the Landfill as "his new boss." That day, Lightsey was transferred back to the Road Department, which is located at the County Farm Building (also known as the County Barn). On the day of Lightsey's transfer, Deen met with him and Miles at the County Farm Building. The men discussed problems that had occurred at the Landfill, and perceived deficiencies in Lightsey's job performance.

Because Lightsey thought that a dispute was soon to arise regarding his work performance, he requested that the County Sheriff be called to the meeting to serve as a neutral witness. Defendants assert that Lightsey's request was refused as unnecessary, because no yelling or physical altercation had occurred. According to Mr. Lightsey, the problems at the Landfill came about because there was no state-certified operator, and because he was given insufficient help to operate the Landfill properly. During the course of the meeting, Mr. Lightsey avers that Deen told him that his wife was not to call County employees at work. Deen then fired him.

Plaintiffs allege that during the following week, Miles convened a meeting of County employees at the Road Department

AO 72A
(Rev. 8/82)

and told them that they would be fired if they spoke to Mr. or Mrs. Lightsey.

On September 21 or 22, 2002, Mr. Lightsey received a form in the mail, dated September 3, 2002, memorializing his suspension. With this form, Mr. Lightsey received a memorandum from Deen, dated September 4, 2002, stating that Lightsey could "say whatever he wanted to at a public meeting . . . with the exception that he should give any information to [his] supervisor and/or myself before blating out in [a] public meeting and perhaps making unfounded accusations." Compl., Ex. E at 2. Deen went on to write that Lightsey was suspended "[d]ue to him being belligerent, argumentative in a public area, personally threatening, not reporting his leave or situation [at the] landfill, [and] uncooperative[.]" Compl., Ex. E at 2.

With the papers relating to his suspension, Lightsey also received a memorandum from Deen, dated September 17, 2002, which provided him with written notice of his termination.

On September 25, 2002, Miles completed Lightsey's termination report. While Miles left the "employee evaluation" section blank, he did recommend that Lightsey be considered ineligible to be rehired by the County.

6

After Lightsey's termination, the County released his unredacted personnel file to a County citizen, William Lewis. Mr. Lightsey admits that he told Lewis that he did not mind if Lewis obtained the file, but argues that the County's release of his file violated his privacy rights because he did not consent to the release of his private information contained therein.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in his favor. . . ", United States v.

AO 72A
(Rev. 8/82)

Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991)(en banc)(internal quotation marks omitted).

## DISCUSSION

Plaintiffs' complaint raises several causes of action: (1) George Lightsey's procedural due process claim, (2) George Lightsey's invasion of privacy claim(s),[1] (3) George Lightsey's freedom of speech claim, (4) George and Doris Lightsey's freedom of association claims, and (5) George and Doris Lightsey's "stigma plus" defamation claims.[2]

---

[1] In addition to Mr. Lightsey's substantive due process invasion of privacy claim, it appears that he may be asserting an invasion of privacy claim arising under state law; or, perhaps he is asserting a state law privacy claim, and does not assert a substantive due process claim. It is hard to tell what his theory of recovery is based on his pleadings, brief, and other evidence in the record.

[2] Plaintiffs have abandoned their intentional infliction of emotional distress claims. Doc. No. 35 at 12. And, although paragraph sixty-four of the complaint states that "Doris Lightsey was not considered for Appling County employment because of her refusal of Defendant Ralph Miles' unwelcome and improper advances and sexual harassment[,]" Mrs. Lightsey has stated that she is not pursuing an employment discrimination claim. Doc. No. 35 at 10.

To the extent that Mr. Lightsey asserts a retaliatory discharge employment discrimination claim under the equal protection clause, based on Miles' averred conduct toward his wife, the Court finds that such a claim is legally deficient. "The right to be free from retaliation [for making complaints of discrimination] is clearly established as a first amendment right and as a statutory right under Title VII; but no clearly established right exists under the equal protection clause to be free from retaliation." Ratliff v. DeKalb County, 62 F.3d 338, 340 (11th Cir. 1995).

8

All, or nearly all, of Plaintiffs' remaining claims arise under 42 U.S.C. § 1983, the federal statute that protects citizens against the deprivation of their federal rights by persons acting under color of state law. With regard to these claims, Defendants assert that they are immune from suit by virtue of Monell v. Department of Social Services, 436 U.S. 658 (1978), and the doctrine of qualified immunity. With respect to any state law cause of action, Defendants assert that they are immune from suit under the doctrines of sovereign immunity and official, or qualified, immunity.

## I. FEDERAL CLAIMS

### A. Appling County, and the Individual Defendants in Their Official Capacities, are Immune from Suit Under *Monell*

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Monell, 436 U.S. at 694.

Appling County maintains that it is immune from suit because it had no policy or custom that caused the deprivation of Plaintiffs' rights. If Appling County asserts a valid

9

defense under <u>Monell</u>, the claims against Deen and Miles in their official capacities are likewise infirm, because naming a government officer in his official capacity is the equivalent of naming the government entity itself as the defendant. <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985).

Certain County policies are set out in a document entitled "Personnel Policies & Procedures for Appling County, Georgia." That document provides, among other things, for progressive levels of discipline depending on the severity of the employee's offense, and allows terminated employees to appeal the firing to the County Attorney. Mr. Lightsey does not contend that these formal policies were the cause of his harm. Rather, he argues that Deen's edicts, in suspending and firing him, "may fairly be said to represent official policy." <u>Monell</u>, 436 U.S. at 694.

While a single decision by a county policymaker can be attributed to the government itself if the official possesses the ultimate power to make such a decision, whether a particular policymaker possesses "final authority" is determined as a matter of law by the court, by reference to applicable state law, including local ordinances and customs having the force of law. <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491

AO 72A
(Rev. 8/82)

U.S. 701, 737-38 (1989)(superceded by statute on other grounds); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 123-32 (1988)(plurality op.); Pembaur v. City of Cincinnati, 475 U.S. 469, 481-83 (1986)(plurality op.).

> Reviewing the relevant legal materials, including state and local positive law, as well as "'custom and usage' having the force of law," . . . the trial judge must identify those officials or government bodies who speak with final authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.

Jett, 491 U.S. at 737 (internal citation omitted).

Under Georgia law, the County Manager did not have final authority over decisions that resulted in termination of employment with the County. Defendants suggest that such authority rested with Board of Commissioners. Deen Aff. ¶ 10.

The Georgia Constitution of 1983 provides:

> Home rule for counties. (a) The governing authority of each county shall have legislative power to adopt clearly reasonable ordinances, resolutions, or regulations relating to its property, affairs, and local government for which no provision has been made by general law and which is not inconsistent with this Constitution or any local law applicable thereto.

Art. IX, §2, ¶1.

Included within the powers that vary by locality under the principle of home rule is "the power to hire, supervise and

11

fire county employees." <u>Krieger v. Walton County Bd. of Commissioners,</u> 271 Ga. 791, 792 (1999); <u>see</u>, <u>e.g.</u>, <u>Crumpler v. Henry County</u>, 257 Ga. App. 615, 616 (2002).[3]

Considering the abbreviated sections of the personnel policy that are in the record, it appears that the County Attorney may also possess the requisite authority to make final decisions regarding termination of employment with the County. However, the parties have not briefed the issue, and the Court declines to reach this matter based on the incomplete record before it. The Court concludes only that, based on the record before the Court, the County Manager lacked the final decision-making power over Lightsey's termination.[4]  <u>See</u> Personnel

---

[3]

Additionally, the Georgia Code provides:

The governing authority of any county of this state or the General Assembly may create in and for those counties in which it deems necessary or advisable the office of county manager and may vest in such office powers, duties, and responsibilities of an administrative nature. The qualifications, method of selection, appointment, compensation, tenure, and such other related matters pertaining to the office of county manager shall be provided for by the governing authority of the county.

Ga. Code Ann. § 36-5-22(a) (2000).

[4]

If the party moving for summary judgment shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1116-17 (11th Cir. 1993).

AO 72A
(Rev. 8/82)

Policies & Procedures for Appling County, Georgia, § 19 A.(5), B.(4);[5] Praprotnik, 485 U.S. at 125-26 (noting that valid local regulations may be considered in determining state law, and that, "[a]ssuming that applicable law does not make the decisions . . . reviewable[,]" final decision-making authority may rest with more than one body or official).

> [I]f county employment policy was set by the Board of County Commissioners [and County Attorney], only [their] decisions would provide a basis for county liability. This would be true even if [the County Commission and County Attorney] left the [County Manager] discretion to hire and fire employees and [he] exercised that discretion in an unconstitutional manner.

Pembaur, 475 U.S. at 483 n.12.

In sum, the policies of Appling County played no part in any violation of federal law, and the County, and individual Defendants in their official capacities, are entitled to judgment as a matter of law.

---

[5] The cited provisions provide, in pertinent part:

In situations where verbal and written reprimands, suspension and/or demotions have not resulted in the expected improvement, or where more severe action is warranted, the employee shall be discharged. The Constitutional officer or department supervisor shall handle the dismissal process in the same manner as provided for a suspension.
. . . .
[D]ismissal may be appealed to the County Attorney who shall issue a finding to uphold or overturn said action to the appropriate Constitutional officer or Board of County Commissioners.

AO 72A
(Rev. 8/82)

**B.   Deen and Miles are Entitled to Qualified Immunity in Their Individual Capacities on Most of Plaintiffs' Claims**

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In evaluating a qualified immunity defense, the Court must first determine if Plaintiffs' rights were violated at all. If so, the Court then considers whether the "right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609 (1999).[6]

Accordingly, the Court will evaluate the merits of the Lightseys' federal causes of action against Miles and Deen. To the extent the claims could otherwise survive summary judgment, the Court will consider whether Miles and Deen violated any rights that were clearly established.

---

[6]   Plaintiffs argue that neither Deen nor Miles are entitled to claim immunity, pursuant to Gamble v. Florida Department of Health & Rehabilitative Services, 779 F.2d 1509, 1512-13 (11th Cir. 1986). Yet, Gamble states only that a governmental official, when sued in his personal capacity, may not assert immunity under the Eleventh Amendment. The Eleventh Amendment, which provides that a non-resident citizen may not sue any of the several states, is distinct from the doctrine of qualified immunity. The defense of qualified immunity is available to governmental employees when sued in their individual capacities. E.g., Foy v. Holston, 94 F.3d 1528, 1532 (11th Cir. 1996). Gamble is not to the contrary.

14

## 1. Mr. Lightsey's Procedural Due Process Rights Were Not Violated at All

> Procedural due process violations do not become complete "unless and until the State refuses to provide due process." More specifically, in the case of an employment termination case, "due process [does not] require the state to provide an impartial decisonmaker at the pre-termination hearing. The state is obligated only to make available the means by which [the employee] can receive redress for the deprivations."

McKinney v. Pate, 20 F.3d 1550, 1562 (11th Cir. 1994) (internal citations omitted).

Lightsey contends that his suspension and termination did not comply with County policies and procedures. Particularly, Lightsey complains that he was not given a hearing regarding his suspension. While conceding that an appeal was available to him regarding his termination, Lightsey maintains that this procedure was insufficient because one of the County Commissioners told him that it "would not do any good" to appeal his termination.

In a letter from Deen to Lightsey, dated September 17, 2002, Deen wrote:

> This is to give you formal notification that you have been discharged from all your duties as an employee of Appling County. Attached [are] the disciplinary actions which were taken on you Tuesday[,] September 3rd and further discussed with you at the County Barn on Monday, September 16th. Also [attached] is a

AO 72A
(Rev. 8/82)

summary leading up to the cause of your dismissal on Monday, September 16th.

Under Appling County's Personnel Policies and Procedures <u>you may contact the County Attorney to appeal any action which has been taken</u>.

Compl., Ex. J at 6 (emphasis added).

In the termination memorandum that Lightsey received in the mail, Deen wrote that Mr. Lightsey "reminded me I had not gone over the [suspension] incident with him and have him sign off within 72 hours as stated in the personnel policy." Compl., Ex. F.

According to Lightsey, by making this statement, Deen admitted that he violated the personnel policy. Yet, Plaintiffs have not cited a provision in the policy containing such a requirement, and the Court has not located such a passage within the portions of the personnel policy that are in the record. The personnel policy does state that:

(1) Anytime a disciplinary hearing is held which is expected to result in a suspension, demotion or dismissal, the employee shall be provided a written Disciplinary Meeting Notice . . . at least seventy-two (72) hours in advance of the scheduled CLOSED meeting.

(2) The employee shall be asked to sign the original notice as an acknowledgment of having received a copy. . . .

AO 72A
(Rev. 8/82)

Personnel Policies & Procedures for Appling County, Georgia, § 19 B.

This provision does not mandate that a disciplinary hearing take place every time a suspension occurs, or entitle an employee to "sign off" on a form if he is suspended without a hearing.[7] Indeed, it appears that Deen followed the personnel policy insofar as he determined that a verbal warning or written reprimand were insufficient to correct the seriousness of Lightsey's purported insubordination. Personnel Policies & Procedures for Appling County, Georgia, § 19 A.(3). In such situations, prompt suspension without pay is called for by the personnel policy. Personnel Policies & Procedures for Appling County, Georgia, § 19.

Nor has Lightsey identified a policy that was violated in the course of his termination. According to the policy:

> In situations where verbal and written reprimands, suspension and/or demotions have not resulted in the expected improvement, or where more severe action is warranted, the employee shall be discharged. The Constitutional officer or department supervisor shall

---

[7]
    In his deposition testimony, Deen acknowledged that he was unsure which County personnel policies were applicable, because the policies were under review for amendment. Contrary to Plaintiffs' suggestion, Deen's ignorance of the applicable policies, in and of itself, did not violate Lightsey's procedural due process rights. Deen stated that he tried to be fair, and that he believed that Lightsey was "entitled to every opportunity that would be legally available to him" in challenging any adverse employment action. Deen Dep. 43.

AO 72A
(Rev. 8/82)

> handle the dismissal process in the same manner as
> provided for a suspension.
>
> . . .
>
> [D]ismissal may be appealed to the County Attorney
> who shall issue a finding to uphold or overturn said
> action to the appropriate Constitutional officer or
> Board of County Commissioners.

Personnel Policies & Procedures for Appling County, Georgia,

§ 19 A.(5), B.(4).

These policies do not contemplate a pre-termination
hearing, and Deen informed Lightsey of his right to a post-
termination appeal. Under McKinney, that is all the notice and
opportunity to be heard that is required. 20 F.3d at 1562; see
also Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir.
2000)("If adequate state remedies were available but the
plaintiff failed to take advantage of them, the plaintiff
cannot rely on that failure to claim that the state deprived
him of procedural due process.")

Lightsey also argues that Miles breached the County's
personnel policy in the course of his termination by failing
to fill out the performance evaluation section of his
termination report. Personnel Policies & Procedures for
Appling County, Georgia, § 50. Presumably, Lightsey contends
that Miles' omission violated his due process rights. Yet, it
is not clear how a performance evaluation from Miles would have

provided Lightsey with any additional notice or opportunity to be heard. In the termination memorandum, Deen provided Lightsey with notice of the reasons for his termination,[8] and informed him that he had an opportunity to be heard, through an appeal to the County Attorney. Miles' failure to fill out the employee evaluation did not violate Lightsey's procedural due process rights.

Appling County provided an adequate remedy for the allegedly wrongful adverse employment actions. Lightsey has not declared that he made any effort at appealing or challenging the actions taken against him. Neither Miles nor Deen violated Lightsey's procedural due process rights.

### 2. Mr. Lightsey's Substantive Due Process Right to Privacy Was Not Violated at All

The substantive component of "the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,'

---

[8]

According to Deen's memorandum, Lightsey "was fired due to his inability to recognize his deficiencies in his job duties, unwillingness to cooperate, lack of recognition or respect for the chain of command, [and] failure to take directives from [his] supervisor and County manager." Compl., Ex. J at 5.

such that 'neither liberty not justice would exist if they were sacrificed.'" <u>Washington v. Glucksberg</u>, 521 U.S. 702, 721 (1997)(internal citations omitted).

The Supreme Court has recognized, as a matter of constitutional structure, a right to privacy implicit in the guarantee of due process of law. Within the "zone of privacy" protected by the Constitution, there are two distinct spheres of protection: (1) public disclosure of private matters, and (2) the interest in making certain decisions, like those relating to marriage, procreation, contraception, and child rearing, free of governmental interference. <u>Whalen v. Roe</u>, 429 U.S. 589, 599-600 (1977).

Lightsey alleges a violation of the first sort — that his privacy rights were violated when the County released his unredacted personnel file to County resident William Lewis.[9] Lightsey avers that he did not consent to the release of his private information to Lewis and that this action violated his constitutional right to privacy.

According to the evidence in the record, a document was given to Lewis that showed Lightsey's social security number

---

[9] The Court assumes, for the sake of argument, that Miles and Deen were involved in the alleged privacy violation, which Lightsey did not aver specifically in his complaint.

and birth date. Compl. Ex. J at 7. However, contrary to Plaintiffs' contention, there is no evidence that any medical information was contained in the records given to Lewis. An unsubstantiated contention in Plaintiffs' brief that unspecified medical information was distributed to Lewis is not evidence that will create a genuine issue of material fact for trial. Doc. No. 35 at 11.

As for the information that was released, under the facts of this case, the distribution of Lightsey's social security number and birth date did not violate Lightsey's constitutional right to privacy. During Lightsey's deposition, he admitted that he did not suspect that Lewis had, or would, misuse his personal data, and Lightsey has not reported any problems like identity theft since the County's release of this information.

This might be a different case if the County had disseminated the information more widely, or if the information showed that Lightsey had some infamous disease, sexually embarrassing condition, or contained some other information that could cause shame or humiliation. See United States v. Westinghouse Elec. Corp., 638 F.2d 570, 577-82 (3d Cir. 1980)(medical information protected from disclosure by federal right to privacy); Doe v. Attorney Gen., 941 F.2d 780, 796-97

AO 72A
(Rev. 8/82)

(9th Cir. 1991)(reasonable government official would have known not to release AIDS diagnosis); <u>Arakawa v. Sakata</u>, 133 F. Supp. 2d 1223, 1226-30 (D. Haw. 2001)(release of social security number to media violates federal constitutional right to privacy, but right not clearly established); <u>Beacon Journal Publ'g Co. v. Akron</u>, 640 N.E.2d 164, 166-69 (Ohio 1994)(disclosure of social security numbers of city employees to newspaper violates federal constitutional right to privacy); <u>Eagle v. Morgan</u>, 88 F.3d 620, 625 (8th Cir. 1996)("to violate [a person's] constitutional right of privacy, the information disclosed must be either a shocking degradation or an egregious humiliation.").

Neither Deen nor Miles violated Mr. Lightsey's constitutional right to privacy.

### 3. Mr. Lightsey's Right to Freedom of Speech Was Not Violated at All

Lightsey asserts that he was suspended and terminated because he contradicted Miles at a Board of Commissioners meeting. Lightsey argues that his remarks related to a matter of public concern, misuse of public funds. To the contrary, Defendants maintain that Lightsey was speaking about a matter relating to his own employment situation.

22

When a public employee asserts that his governmental employer has made an adverse employment decision based on protected speech, the Court must balance the employee's right, as a citizen, to speak out on matters of public concern against the government's right, as an employer, to maintain an effective work environment. Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968).

> [A] court must determine whether the employee's speech may be fairly characterized as constituting speech on a matter of public concern. If so, the district court must weigh the employee's first amendment interests against the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.

Watkins v. Bowden, 105 F.3d 1344, 1352-53 (11th Cir. 1997) (quoting Morgan v. Ford, 6 F.3d 750, 754 (11th Cir. 1993) (quotation marks, citations, brackets omitted)). If the employer prevails on the balancing test, no unlawful retaliation has occurred.

In deciding whether to characterize the employee's speech as a matter of public concern, the Court must consider "whether the speech at issue was made in the employee's role as a citizen or as employee." Deremo v. Watkins, 939 F.2d 908, 910 (11th Cir. 1991). The Court considers the employee's motivation for speaking, and whether the remarks were made

23

publicly. Id. at 910-11. Specific workplace grievances are not matters of public concern. Morgan, 6 F.3d at 755.

In this case, it is difficult to categorize Lightsey's remarks as primarily that of an employee or citizen. On the one hand, Lightsey admits that he came by the information in his statement on the job. Moreover, he continued to be under Miles' supervision when he made the remarks. This suggests that Lightsey may have been motivated to challenge his supervisor for any number of employment-related reasons. During his deposition, Lightsey also stated that he felt that it was part of his job to bring issues like the pipe payment problem to light. On the other hand, Lightsey was an Appling County resident, no commissioner or supervisor requested or required his attendance, the meeting apparently occurred outside of Lightsey's normal working hours, he attended the meeting with his wife, and he apparently made his public remarks from the audience.

Considering all the facts, Lightsey's public statement "may be fairly characterized as constituting speech on a matter of public concern." Bowden, 105 F.3d at 1353 (emphasis added). However, Lightsey's First Amendment interest is weakened by the close connection his remarks had to his job.

24

In <u>Waters v. Churchill</u>, Justice O'Connor explained that, to prevail on the <u>Pickering</u> balancing test, the facts to be weighed on government's side merely need to be reasonable in view of what occurred, and that the supervisor's view of the circumstances is entitled to substantial weight. 511 U.S. 661, 673-81 (1994)(plurality op.).[10] In considering the factual basis for the adverse employment action, the Court defers to the employer's reasonable view of "what the speech was, in what tone it was delivered, what the listener's reactions were[.]" <u>Id</u>. at 677, 668.

The plurality recognized that "[g]overnment employees are often in the best position to know what ails the agencies for which they work; public debate may gain much from their informed opinions." <u>Id</u>. at 674.

> [Nonetheless, the Court has] given substantial weight to government employers' reasonable predictions of disruption, even when the speech involved is on a matter of public concern. . . . When someone who is paid a salary so that she will contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain her. . . . Of course, there will

---

[10]

While Justice O'Connor's opinion garnered only four votes, the reasonableness test that it set out states the holding of the Court because it is more exacting than Justice Scalia's concurring opinion, and a separate majority "is of the view that employers whose conduct fails the plurality's reasonableness test have violated the Free Speech Clause." <u>Id</u>. at 685 (Souter, J., concurring).

AO 72A
(Rev. 8/82)

often be situations in which reasonable employers
would disagree about who is to be believed, or how
much investigation needs to be done, or how much
evidence is needed to come to a particular
conclusion. In those situations, many different
courses of action will necessarily be reasonable.

Id. at 673, 675, 678.

After the Commissioners' meeting ended, Deen performed an

investigation. According to Deen's memorandum, Lightsey was

not forthcoming with information regarding the misuse of county

funds. Deen wrote that Lightsey believed himself free to be

uncooperative because he "no longer worked at the Road

Department." Compl., Ex. E at 2. Deen wrote that Lightsey

could "say whatever he wanted to at a public meeting . . . with

the exception that he should give any information to [a]

supervisor and/or myself before blating out in public meeting

and perhaps making unfounded accusations." Compl., Ex. E at

2.

Based on this investigation, Deen was permitted to find

that Lightsey's actions were disruptive to the effective

functioning of the Public Works Department, of which Lightsey

was a part, and that Lightsey treated his requests for more

information with insubordination. "As a matter of law, this

potential disruptiveness was enough to outweigh whatever First

Amendment value the speech might have had." Waters, 511 U.S.

AO 72A
(Rev. 8/82)

at 680. "We have never held that it is a violation of the Constitution for a government employer to discharge an employee based on substantively incorrect information." Id. at 679; see also Sims v. Metro. Dade County, 972 F.2d 1230, 1234-35 (11th Cir. 1992).

In sum, Lightsey's marginal free speech interests do not prevail against the strong interests of the County. Defendants did not violate Lightsey's freedom of speech rights.

### 4. Miles and Deen Did Not Violate Mrs. Lightsey's Freedom of Association Rights

Mrs. Lightsey contends that Deen violated her freedom of association rights when he told her husband that she was not to call County employees at work. Yet, during Mrs. Lightsey's deposition, she admitted that she could speak to County employees when they were not working, and she does not allege that any County employee ever admonished her for calling County workers for business reasons during work hours. Nor does Mrs. Lightsey declare that Deen threatened her with any kind of sanction if she called regarding personal business during work hours.

The Court finds that, as a matter of law, Deen's directive to Mrs. Lightsey did not "unduly intrude" on her right "to

27

enter into and maintain certain intimate human relationships"
so as to violate her freedom of association rights.  <u>Roberts
v. U.S. Jaycees</u>, 468 U.S. 609, 618 (1984) (state law
prohibiting    sex    discrimination    in    places    of    public
accommodation did not abridge male Jaycees' rights to "intimate
association" or "expressive association").    Nor were her
expressive association rights impeded by the County.  As she
admitted, she remained free to meet and associate with County
employees when they were not working for any lawful purpose.

### 5. **Miles and Deen May Have Violated Mr. Lightsey's Clearly Established Freedom of Association Rights**

Mr. Lightsey argues that Defendants violated his right to
"intimately associate" with his wife by firing him after his
wife refused Miles' sexual advances and threatened to file
suit.

In the Eleventh Circuit, intimate association claims are
analyzed under the First Amendment.  <u>See</u> <u>Shahar v. Bowers</u>, 114
F.3d 1097, 1110 (11th Cir. 1997)(en banc); <u>City of Dallas v.
Stanglin</u>, 490 U.S. 19, 23-24 (1989).[11]    The <u>Shahar</u> court

---

[11]
      <u>But</u> <u>see</u> <u>Swank v. Smart</u>, 898 F.2d 1247, 1251-52 (7th Cir.
1990)(wherein Judge Posner opined that, in light of <u>Roberts</u> and <u>Stanglin</u>,
the right of intimate association is better analyzed under the rubric of
                                            (continued...)

AO 72A
(Rev. 8/82)

explained that the <u>Pickering</u> balancing test should be applied to intimate association claims, recognizing that the government is entitled to much more deference when it interferes with its employees' First Amendment interests than when it impedes a private citizen's First Amendment rights as sovereign. <u>Shahar</u>, 114 F.3d at 1102.

At this stage in the proceedings, the Court must view the evidence in the light most favorable to Plaintiffs. The Lightseys' testimony, if believed, establishes that Mr. Lightsey was fired in retaliation for his wife's refusal to accede to Miles' alleged sexual advances, or her threat to sue because of those actions. If true, the <u>Pickering</u> balance would weigh in Mr. Lightsey's favor — he would state a claim entitling him to relief for violation of the right to intimate association.

On the employee's side of the scale, the marital relationship has significant heft. The right to sustain the marital relationship is at the core of the intimate association right implicit in the First Amendment. <u>Parks v. City of Warner Robins</u>, 43 F.3d 609, 615 (11th Cir. 1995); <u>Roberts</u>, 468 U.S.

_____

[11](...continued)
the substantive due process clause).

AO 72A
(Rev. 8/82)

at 618-20. It is the sort of relationship a government employer should not impede based on an employee's spouse's complaints of improprieties, regardless of their merit. Any embarrassment engendered by publicity of Mrs. Lightsey's complaints would be relatively modest, and the employer's interest in maintaining an effective work environment should not be impeded significantly by the specter of such a lawsuit. See Adler v. Pataki, 185 F.3d 35, 44 (2d Cir. 1999)(recognizing the importance of the marital relationship, and the relatively insubstantial discomfort an employer might have about a discrimination lawsuit brought by an employee's spouse).

Yet, when suing a government official in his personal capacity, it is not enough to show that a claim can survive summary judgment. The plaintiff must also demonstrate that the law was clearly established at the time of the alleged violation. Foy v. Holston, 94 F.3d 1528, 1532 (11th Cir. 1996). Thus, "the salient question . . . is whether the state of the law in [2002] gave [Defendants] fair warning that their alleged treatment of [Lightsey] was unconstitutional." Hope v. Pelzer, 536 U.S. 730, 741 (2002).

The Court has cautioned against requiring that the prior law be clearly established in cases with "fundamentally

AO 72A
(Rev. 8/82)

similar" factual scenarios. <u>United States v. Lanier</u>, 520 U.S. 259, 270-71 (1997). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." <u>Hope</u>, 536 U.S. at 741.

> "[C]learly established" for purposes of qualified immunity means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but is to say that in light of pre-existing law the unlawfulness must be apparent."

<u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)(citations omitted).

A reasonable government official in Appling County, Georgia, had fair warning of the Supreme Court precedents recognizing the right of intimate association as a protected interest under the First Amendment. <u>See</u>, <u>e.g.</u>, <u>Bd. of Dirs. of Rotary Int'l v. Rotary Club</u>, 481 U.S. 537, 545-46 (1987). It also would have been readily apparent in 2002 that the marital relationship is at the core of the interests that are protected by that right. <u>Roberts</u>, 468 U.S. at 618-20. <u>Roberts</u>, and its progeny,[12] served as "fair warning" that

---

[12]

The Eleventh Circuit has explained that, in its view, <u>Wilson v. Layne</u>, 526 U.S. 603, 617 (1999), does not oblige local government

(continued...)

AO 72A
(Rev. 8/82)

firing Lightsey in retaliation for his wife's refusal of Miles' advances, or her threatened legal action, would violate the law. As the <u>Hope</u> Court emphasized, that such a claim is relatively novel is not fatal to Mr. Lightsey's claim.

If Lightsey's version of the facts is believed, he would be entitled to relief for violation of his intimate association rights. Because the unlawfulness of this kind of vindictive firing should have been obvious, Deen and Miles may not assert qualified immunity as a defense to Mr. Lightsey's intimate association claim.

### 6. The Lightseys' "Stigma Plus" Claims Fail as a Matter of Law

In <u>Paul v. Davis</u>, 424 U.S. 693, 712 (1976), the Court explained that defamation by the government, in and of itself, does not violate the substantive component of the due process clause. Rather, to make out a defamation-type claim under the due process clause, the plaintiff must prove that the slander or libel occurred in the course of depriving him of some other

---

[12]( ...continued)
officials to look outside of their jurisdiction for a consensus of authority to determine which laws are clearly established. <u>Thomas ex rel. Thomas v. Roberts</u>, 323 F.3d 950, 955 (11th Cir. 2003)(internal citation omitted).

AO 72A
(Rev. 8/82)

right under state law.  <u>Id</u>. at 708-10 (resulting in the "stigma plus" moniker for this sort of claim).

When Mr. Lightsey was asked during his deposition how he felt he was defamed by the Defendants, he responded that it was the termination itself that he found humiliating.  The act of terminating Lightsey, by itself, does not state a claim under <u>Paul</u>, and even considering the other facts in the record, there is no assertion that any Defendant uttered any false or defamatory statement in the course of his termination. Plaintiffs have not alleged that Miles uttered any false statement in the week after Lightsey's termination, just that he directed some County employees not to speak with the Lightseys.

If there is no false statement that harms a person's reputation in their community, there is no "stigma."  The envisioned remedy of a "name-clearing" hearing is meaningless in such circumstances.  <u>See</u> <u>Codd v. Velger</u>, 429 U.S. 624, 627 (1977); <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 573 (1972).

Mrs. Lightsey's stigma plus claim also fails.  In addition to the lack of an allegedly false statement made by a Defendant, her claim is also deficient because there is no averment that Defendants besmirched her name in the course of

33

depriving her of any right under state law. The comments that Miles allegedly made, telling County workers not to talk to her, occurred in the course of her husband's termination, not during any adverse action against her. As a result, "the interest in reputation asserted in this case is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." Paul, 424 U.S. at 712.[13]

Plaintiffs' "stigma plus" claims fail as a matter of law.

## II. STATE LAW INVASION OF PRIVACY CLAIM

### A. Appling County Has Sovereign Immunity

Appling County asserts sovereign immunity on Mr. Lightsey's state law invasion of privacy claim. "A County is not liable to suit for any cause of action unless made so by statute." Ga. Code Ann. § 36-1-4 (2000). Lightsey has not

---

[13]

In their brief in opposition to Defendants' motion for summary judgment, Plaintiffs make an oblique reference to the fact Defendants' "failure to rehire Mr. Lightsey is actionable under the Fourteenth Amendment," citing to Roth and Paul. Doc. No. 35 at 12. As there are no allegations in the complaint, or any other facts in the record, that support the idea that Lightsey ever tried to get rehired by the County, the Court will not address this argument. Indeed, it would be nearly impossible to do so without more information. In Plaintiffs' brief, Mr. Lightsey appears to raise this contention in connection with his "stigma plus" claim. Yet, even if the "failure to rehire" served as the "plus" in this instance, it would not relieve Lightsey of the burden of identifying some defamation that accompanied his unsuccessful attempt to regain his County job.

34

asserted any ground for waiver of that immunity, such as the purchase of liability insurance. Ga. Code Ann. § 36-33-1 (2000). Consequently, the County is entitled to governmental immunity. <u>Cameron v. Lang</u>, 274 Ga. 122, 127 (2001).

**B.  The Individual Defendants Have Official Immunity**

Miles and Deen contend that they are immune from suit on Lightsey's state law claim by official, or qualified, immunity. The Georgia Constitution provides:

> (d) Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived.

Art. I, § II, ¶ IX(d).

This provision applies to county employees. <u>Toombs County v. O'Neal</u>, 254 Ga. 390, 391 (1985).

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the

35

execution of a specific duty. A discretionary act
calls for the exercise of personal deliberation and
judgment, which in turn entails examining the facts,
reaching reasoned conclusions, and acting on them in
a way not specifically directed. Procedures or
instructions adequate to cause an act to become
merely ministerial must be so clear, definite and
certain as merely to require the execution of a
relatively simple, specific duty.

Middlebrooks v. Bibb County, 261 Ga. App. 382, 385-86 (2003).

Lightsey's theory of liability regarding his privacy claim

is opaque, at best. At this stage of the proceedings, the time

has long since come for Mr. Lightsey to make his theory of

liability known, both to Defendants and the Court. All that

has been stated is that Defendants violated his right to

privacy by releasing an unredacted version of his personnel

file to William Lewis. Lightsey has not identified a specific

Defendant involved in this alleged wrong, if he intends to

implicate a Defendant other than the County itself. He has not

stated that he is asserting a violation of state law, as

opposed to a federal law claim under § 1983, which is the

jurisdictional basis for Plaintiffs' other claims in this

lawsuit.[14]    Further, Lightsey cites no state (or federal)

---

[14]

    The "Open Records Act," codified at Ga. Code Ann. §§ 50-18-70 - 50-
18-77, provides citizens with a means of obtaining access to, and copies
of, public records. Mr. Lightsey concedes that his personnel file could
be given to Lewis pursuant to an open records request, but maintains that
Defendants were not permitted to divulge his private information. The
                                                        (continued...)

36

AO 72A
(Rev. 8/82)

authority in support of his privacy claim, making it difficult to ascertain his intentions.

More relevant to the viability of Lightsey's possible privacy claim under state law, he has not made known whether he is asserting that the release was a negligent ministerial act, or whether he alleges that Deen or Miles gave the unredacted version of the file to Lewis intentionally to invade his privacy. In light of the dearth of evidence associated with either allegation, the individual Defendants are entitled to summary judgment on Mr. Lightsey's state law claim.

The Court will assume, _arguendo_, that the release of a personnel file pursuant to an open records request is a ministerial act, and liability for an invasion of privacy that results therefrom may be grounded on negligence under the Georgia constitution. Yet, it is implausible that a County Manager or Public Works Director would be involved in the rote processing of such a request, and there is no evidence, or even a specific averment, that either was involved.

---

[14] (...continued)
Georgia Code provides that "Public disclosure shall not be required for records that are . . . [m]edical . . . records and similar files, the disclosure of which would be an invasion of personal privacy[.]" Ga. Code Ann. § 50-18-72(a)(2) (2004 Supp.).

AO 72A
(Rev. 8/82)

If Lightsey is alleging that one of the individual Defendants distributed his personnel file to Lewis to invade Lightsey's privacy out of some malice or ill will toward him, his claim fails because there is no evidence that either Deen or Miles acted with any intent to cause him harm in releasing his unredacted personnel file to Lewis. Lightsey did not attribute such a motive to Deen or Miles during his deposition, or otherwise in the pendency of this case. Indeed, Lightsey has not so much as said that either were involved in the alleged privacy violation at all.

Deen and Miles are entitled to official immunity on Lightsey's state law invasion of privacy claim.


## CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment is **GRANTED** in part, and **DENIED** in part. See Doc. No. 26.

There is a genuine issue of material fact regarding whether Mr. Lightsey was fired in retaliation for his wife's refusal to accede to Miles' sexual advances, or her complaints about this conduct. If this allegation is proven true, Deen and/or Miles violated Mr. Lightsey's First Amendment right of

38

intimate association. While Appling County is shielded from liability on this cause of action because no policy or custom caused the deprivation, the individual Defendants may not assert qualified immunity because the law was clearly established at the time of the alleged violation. Defendants are entitled to summary judgment on Plaintiffs' other claims.

**SO ORDERED**, this _____ 26th _____ day of July, 2005.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)